PATRICIA CHEEVER & others[1] *vs.* DAVID A. GRAVES
& another.[2]

No. 90-P-1517.

Worcester. February 13, 1992. - May 29, 1992.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

*Practice, Civil,* Parties, Standing. *Easement. Real Property,* Easement,
Beach. *Conflict of Laws.*

In a civil action, plaintiffs had standing as representative individual mem-
bers of an unincorporated association of property owners to initiate the
action on behalf of the association, where the plaintiffs were the officers
of the association and claimed a shared easement with other members
of the association over the defendants' land. [604-605]
The language in a 1925 deed expressly reserving the right to use a beach
and a right of way ten feet in width over a certain subdivision lot as
access to the beach for the benefit of other lot owners, was sufficient to
create an express easement and the easement rights passed by grant to
subsequent owners of the lots without specific reference in the chains of
title. [605-606]
The doctrine of merger was applicable to extinguish easement rights with
respect to certain lots held in common ownership in a subdivision [606-
607], and the record of a civil action did not demonstrate that the ease-
ment was created anew by grant, reservation, or implication in subse-
quent conveyances of the lots [607-609].
In a civil action concerning easement rights appurtenant to certain lots in
a subdivision of land located in Massachusetts and Connecticut, the
judge correctly applied Massachusetts law. [609-610]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 19, 1987.

The case was heard by *Robert V. Mulkern,* J.

*Ernest A. Belforti* (*Sharon R. McMahon Sawyer* with
him) for the defendants.

---

[1] Origene J. Grenon and Deborah Hardin, on behalf of themselves and
all other members of the Colonial Park Beach Association.

[2] Kimberly E. Graves.

*Anne Marie Hurley* for the plaintiffs.

PORADA, J. The plaintiffs brought suit in the Superior Court seeking to enjoin the defendants from interfering with their right to use the beach at Webster Lake along Lot 2 of a plan of lots in Colonial Park recorded in Plan Book 61, Plan 31, in the Worcester County registry of deeds and from using a ten-foot right of way over this lot as access to the beach. The defendants own a portion of Lot 2. The judge determined that the owners of lots in the Colonial Park subdivision shown on Plan Book 61, Plan 31, had the right to use the beach area on Lot 2 and had a ten-foot right of way to be designated by the defendants over Lot 2 as access to the beach area. From this judgment, the defendants appeal and claim that the judge erred in concluding that (1) the plaintiffs had standing to sue on behalf of an unincorporated association, the Colonial Park Association; (2) an express easement was created when Lot 2 was conveyed in 1925 by the plaintiffs' predecessor in title to the defendants' predecessor in title; (3) the doctrine of merger did not apply to the circumstances of this case; and (4) Massachusetts law controlled the determination of whether Lot 2 was burdened with easements belonging to owners of lots located in Connecticut. We affirm the judge's decision in part.

We summarize the pertinent evidence which is not in dispute. In 1924, The Narrows Land Company subdivided a large tract of land into approximately 140 lots, some of which were located in Connecticut and some of which were located in Massachusetts. The subdivision was known as Colonial Park and was shown on a plan recorded in Plan Book 61, Plan 31, in the Worcester County registry of deeds. In 1925, The Narrows Land Company conveyed Lot 2 on that plan to Emil W. and Bertha Fritzsche. Lot 2 was situated on Lake Chaubunagungamaug, also known as Lake Webster. The deed to the Fritzsches contained the following language:

> "The beach on said lot and a right of way at least 10 feet in width to same shall be forever kept open for use of owners of land at said Colonial Park and their families and guests . . . ."

Subsequent to this conveyance, The Narrows Land Company sold many subdivision lots both in Connecticut and in Massachusetts. None of the deeds to the lots in Massachusetts and none of the deeds of the three identified lot owners in Connecticut contained language expressly granting the right to use the beach on Lot 2 or access to the beach over Lot 2. The record is silent as to whether any of the other deeds to lots situated in Connecticut contained any such language.

In April, 1964, the Fritzsches conveyed Lot 2 along with a number of other lots in the Colonial Park subdivision[3] to Otto Berg and Paul H. Hornbeck. This deed recited that Lot 2 was subject to beach rights and a ten-foot right of way thereto created by the deed to this lot from The Narrows Land Company to the extent that the same was in force but not reimposing the same. Berg and Hornbeck then conveyed all the property acquired by this deed from the Fritzsches together with a number of other lots[4] in the Colonial Park subdivision acquired from other owners to New-Web Realty, Inc. This deed recited that Lot 2 was "subject to beach rights and ten foot right of way thereto as the same may be in force and effect." New-Web Realty, Inc., merged with Webster Academy, Inc., to form one corporation known as Webster Academy, Inc. Webster Academy, Inc., conveyed all the land acquired by New-Web Realty, Inc., by deed from Berg and Hornbeck in the Colonial Park subdivision together with additional lots[5] in Colonial Park acquired from unknown lot owners to Colonial Park Realty, Inc. In 1974, Colonial Park Realty, Inc., conveyed all of these lots in the Colonial Park subdivision to Webster Academy Corporation.

[3]The specific lots conveyed in addition to Lot 2 were Lots 139 through 147, 167 through 170, 172, and 258, all as shown on the plan of lots of Colonial Park recorded in Plan Book 61, Plan 31, in the Worcester County registry of deeds.

[4]These lots were Lots 1 (the hotel lot), 2, 137-147, 158, 167-172, 250-251, 256-258, and 300 shown on the plan of lots in Colonial Park recorded in Plan Book 61, Plan 31, in the Worcester County registry of deeds.

[5]These lots were Lots 154, 173-174, 202-204, 211-213, and 254-255 as shown on the plan of lots in Colonial Park recorded in the Worcester County registry of deeds in Plan Book 61, Plan 31.

The deed from Colonial Park, Inc., to Webster Academy Corporation recited that Lot 2 was subject to beach rights and a ten-foot right of way thereto as the same may be in force and effect. In 1979, Webster Academy Corporation recorded a plan of land in the Worcester County registry of deeds which divided Lot 2 into Lot 10 and an undesignated lot. The plan contained no reference to beach rights or a right of way over Lot 2. In 1985, Webster Academy Corporation conveyed Lot 10 on that plan to the defendants, who owned a home on an adjacent undesignated lot.[6] The defendants' deed to Lot 10 recited that it was "subject to all beach rights of record affecting [the] premises." The defendants were also advised at the time of the purchase that the lot might well be subject to a right of other lot owners of Colonial Park to use the beach and a right of way to the beach. From 1925 until the defendants acquired this lot, owners of lots in Colonial Park regularly crossed and recrossed Lot 2 to get to the beach area which they enjoyed. After the defendants purchased the property, they erected a fence and a dock on this lot preventing the plaintiffs and other lot owners in Colonial Park from access to the beach or from using its beach area. As a result, the plaintiffs initiated this action.

1. *Standing.* The defendants claim that the plaintiffs lack standing to sue on behalf of an unincorporated association. While the defendants are correct that an unincorporated association may not be a party to litigation, *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 675 (1975), the judge found that the plaintiffs were all property owners of lots in Colonial Park and officers of the Colonial Park Association, an unincorporated association of property owners of lots in the Colonial Park subdivision. These findings are unchallenged by the defendants in this appeal. As property owners claiming an easement over the defendants' land, they certainly have standing in their own right to pursue this action. Further, while an unincorporated association may not

---

[6]It is not clear from the transcript whether the lot is the undesignated lot shown on the plan recorded in the Worcester County registry of deeds in Plan Book 463, Plan 67.

be a party to litigation, suit may be brought by or against the members of the association by representative individual members who will fairly and adequately protect the interests of the association and its members. Mass.R.Civ.P. 23.2, 365 Mass. 769 (1974). See *Labor Relations Commn.* v. *Boston Teachers Union, Local 66*, 374 Mass. 79, 83 (1977). In this case, where the plaintiffs were the officers of the association and claimed a shared property right of access to, and use of, the beach along Lot 2, we conclude that the judge did not err in ruling that they had standing as representative members of that association to initiate this action on its behalf.

2. *Express easement.* The defendants assert that the language of the 1925 deed from the Narrows Land Company to the Fritzsches, which recited that the beach on Lot 2 and a right of way at least ten feet in width to the same shall be forever kept open for the use of owners of land at said Colonial Park, was insufficient to create an express easement. We disagree.

"An easement is an interest in land which grants to one person the right to use or enjoy land owned by another." *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 133 (1990), S.C., 412 Mass. 309 (1992). Here, The Narrows Land Company expressly reserved the right to use the beach fronting Lot 2 and a right of way ten feet in width over it as access to the beach for the benefit of other lot owners in its subdivision. The beach area is specifically identified as the beach on Webster Lake along Lot 2, which lot is described by metes and bounds and shown on a plan recorded in the Worcester County registry of deeds. Incidental to the right to use the beach is a right of access over the lot to the beach. The mere fact that the precise location is undefined does not negate the existence of the right of access. *Rice* v. *Vineyard Grove Co.*, 270 Mass. 81, 87 (1930). Moreover, the parties are free to locate a previously undefined right of access, or in the absence of agreement by the parties as to its location a court may fix the bounds of a right of way not located by the instrument creat-

ing it. *Mugar* v. *Massachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. 443, 445 (1990).

The defendants also argue that an express easement does not exist because the deeds in the plaintiffs' chain of title do not contain any reference to beach rights or access to the beach over Lot 2. However, rights and appurtenant easements pass by grant without specific mention. G. L. c. 183, § 15. *Kenney* v. *Marino*, 350 Mass. 534, 535 (1966). *Carls* v. *Lexington Fed. Sav. & Loan Assn.*, 11 Mass. App. Ct. 87, 90 (1980). Consequently, the fact that no easement rights to Lot 2 are expressly recited in the plaintiffs' chain of title is of no significance.

3. *Doctrine of merger.* The defendants assert that the trial judge erred in ruling that the doctrine of merger was inapplicable to the circumstances of this case because there was evidence that in 1964 some of the lots in Colonial Park and Lot 2 were owned by the same persons or entity. "[I]n order to extinguish an easement by merger, a unity of title must have come into existence in the same person. . . . [An owner] cannot have an easement in its own estate in fee." *York Realty, Inc.* v. *Williams*, 315 Mass. 287, 289 (1943). For the unity of title to extinguish an easement, the ownership of the two estates must be coextensive. *York Realty, Inc.*, 315 Mass. at 290. *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 142 (1982). "When a person holds one estate in severalty and only a fractional part of the other, there is no extinguishment of an easement." *Mills* v. *Mason*, 120 Mass. 244, 251 (1876). *York Realty, Inc.*, 315 Mass. at 290. For the unity of title to extinguish an easement, it is the ownership of the two estates that must be coextensive, *Mills* v. *Mason*, 120 Mass. at 251; *York Realty, Inc.*, 315 Mass. at 290, and not the land area comprising the dominant and servient estates. The common ownership need not extend to the whole of the original dominant estate. 2 American Law of Property § 8.92 (1952 & 1977 Supp.).

Consequently, the trial judge erred when he determined that the doctrine of merger was not applicable to the circumstances of this case. When New-Web Realty, Inc., acquired

the common ownership of Lot 2 and several other lots in Co-
lonial Park from Berg and Hornbeck, the easement was ex-
tinguished as to those lots in Colonial Park conveyed by that
deed but only as to the lots described therein. The easement
was not extinguished as to those lots in the Colonial Park
subdivision which were not held in common ownership by
New-Web Realty, Inc., and its successors in title to this land.
See *York Realty, Inc.,* 315 Mass. at 290.

Once an easement is extinguished by merger, it cannot
come into existence again merely by severing the dominant
and servient estates. For the easement to arise again, it must
be created anew by express grant, by reservation, or by im-
plication. Restatement of Property § 497 (1944 & 1991-1992
Supp.). 2 American Law of Property § 8.91 (1952 & 1977
Supp.). Tiffany, Real Property § 822, at 381 (3d ed. 1939 &
1992 Supp.) Because the judge concluded that the doctrine
of merger was inapplicable, he did not determine whether the
easement was created anew for those Colonial Park lots held
in common ownership with Lot 2 subsequent to their convey-
ance to New-Web Realty, Inc., in 1964. He did find, how-
ever, that none of the individual deeds to the Colonial Park
land owners contained any reference to beach rights or ac-
cess rights over Lot 2. Thus, if the easement was created
anew in those lots held in common ownership with Lot 2 by
New-Web Realty, Inc., and its successors in title, it would
have had to arise by implication.

The burden of proof of establishing easements by implica-
tion in those several Colonial Park lots held in common own-
ership with Lot 2 lay with the plaintiffs. *Boudreau* v. *Cole-
man,* 29 Mass. App. Ct. 621, 629 (1990). "[The] origin [of
implied easements] must be found in a presumed intention of
the parties, to be gathered from the language of the instru-
ments when read in the light of the circumstances attending
their execution, the physical condition of the premises, and
the knowledge which the parties had or with which they are
chargeable." *Perodeau* v. *O'Connor,* 336 Mass. 472, 474
(1957). It appears from the record that the titles to Lot 2
and the other lots in Colonial Park acquired by New-Web

Realty, Inc., in 1964 were held in common ownership by several corporations until Webster Academy Corporation acquired ownership to these lots in 1974. The record is silent as to whether the corporation conveyed any of the other lots prior to its conveyance of Lot 2 to the defendants in 1985. If it conveyed any of the merged lots prior to its conveyance of Lot 2, the plaintiffs have presented no evidence that an easement by implication in Lot 2 was created by any such conveyance. Consequently, as to any lot conveyed by the Webster Academy Corporation before its conveyance of Lot 2 to the defendants, the plaintiffs have failed to establish a grant of an easement by implication to those lot owners.

The remaining question then is whether upon the conveyance of Lot 2 Webster Academy Corporation reserved an easement by implication in the remaining lots, if any, owned by it. "[T]he rule that a deed is to be construed most strongly against the grantor may render it more difficult to imply an easement by reservation for the grantor's benefit than an easement by grant for the grantee's benefit." *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940). *Boudreau* v. *Coleman*, 29 Mass. App. Ct. at 629. Here, the defendants' deed to Lot 10, which is a portion of Lot 2, recites that it is subject to beach rights of record. The plaintiffs made no showing that the rights reserved in the 1925 deed of The Narrows Land Company to the Fritzsches were recreated as matter of the record after the merger in 1964. Indeed, we find significant that the plan of land recorded by Worcester Academy Corporation of the subdivision of Lot 2 and referred to in the description of Lot 10 conveyed to the defendants does not delineate any beach rights or right of way over the subject premises held by it. Compare *Boudreau* v. *Coleman*, 29 Mass. App. Ct. at 630. Other than these two instruments, the record is silent as to what was the intent of Webster Academy Corporation at the time of the conveyance of Lot 10 to the defendants.

In determining whether the parties intended to reserve an easement by implication, an important consideration is whether that easement is reasonably necessary for the enjoyment of the land retained. *Krinsky* v. *Hoffman*, 326 Mass.

683, 688-689 (1951). *Boudreau* v. *Coleman*, 29 Mass. App. Ct. at 630. In this case, the plaintiffs made no showing of reasonable necessity, because they failed to show that, at the time Webster Academy Corporation conveyed Lot 10, it had no other waterfront access.

While it is true that the trial judge found that the defendants were alerted to the claim of beach and access rights at the time of purchase, see *Anderson* v. *DeVries*, 326 Mass. 127, 132 (1950), and that there was an open and obvious use of the beach on Lot 2 and access over the lot for that purpose by the owners of lots in Colonial Park, see *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 108 (1933), we think that these findings are not sufficient. Because the judge made these findings in reaching his conclusion that an easement to use the beach and access to the beach on Lot 2 were created by the 1925 Narrows Land Company deed, he did not reach the question whether an easement by implication arose when Webster Academy Corporation conveyed Lot 10 to the defendants. In addition, the plaintiffs produced no evidence that the open and obvious use of the beach on Lot 2 and access over it were for the benefit of lots owned by Worcester Academy Corporation or that the claim of beach rights was a claim on behalf of Worcester Academy Corporation rather than a claim by the owners of other lots whose title had not been held in common ownership with Lot 2. The evidence on these issues as it relates to an assertion that an easement by implication arose at the time of the conveyance of Lot 10 to the defendants is ambiguous at best. Thus, we conclude that the plaintiffs failed to sustain their burden to prove the existence of an implied easement.

4. *Choice of law.* The defendants contend that Connecticut law controls the determination whether Connecticut lot owners have an easement in Lot 2 and that under Connecticut law they would not have such an interest. The defendants rely both on the Connecticut recording statute[7] and on the

---

[7]"No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the

fact that the deeds to the Connecticut lots allegedly do not contain any reference to beach rights on Lot 2 or access thereto over Lot 2. We find little merit in this argument. In the first place, there is nothing in the record before us to indicate that the defendants requested that the judge take judicial notice of the law of Connecticut or that the defendants called the judge's attention to this statute. Under such circumstances, it is presumed that the law of Connecticut is the same as that of Massachusetts. *Hanson* v. *Hanson*, 287 Mass. 154, 157 (1934). Secondly, the defendants in this case had actual notice of the claimed easement at the time of purchase. Even under the law of Connecticut such notice would preclude reliance on the recording statute in question to bar the plaintiffs' claim. See *Rosenblum* v. *Chellstrop*, 29 Conn. Supp. 210, 215 (Super. Ct. 1969). Thirdly, under the law of Connecticut appurtenant easements pass without specific mention. *Zavisza* v. *Hastings*, 143 Conn. 40, 46 (1955). *Andrzejczyk* v. *Advo Sys., Inc.*, 146 Conn. 428, 434 (1959). Finally, although disputes concerning interests in real property are properly governed by the law of the State where the land is located, Restatement (Second) of Conflict of Laws § 223 (1969), the property interest at stake in this case is the existence of an easement over Lot 2 situated in Massachusetts. We have said that "[t]he most important interest of the situs in land transactions is the protection of bona fide purchasers or other persons who rely on the record title. Additionally, it is desirable for purposes of convenience that a purchaser and his title searchers need consult only the law of one jurisdiction." *Rudow* v. *Fogel*, 12 Mass. App. Ct. 430, 436 (1981). Applying Massachusetts law assures this protection to bona fide purchasers of Lot 2. For all of these reasons, there was no error in the judge's application of Massachusetts law.

We vacate the judgment and remand to the Superior Court for entry of judgment consistent with this decision that establishes an easement appurtenant to the lots in the Colo-

town in which the land lies. . . . " Conn. Gen. Stat. Ann. § 47-10 (West 1986).

nial Park subdivision shown on the plan recorded in the Worcester County registry of deeds in Plan Book 61, Plan 31, except for and excluding those lots held at one time in common ownership with Lot 2 by New-Web Realty, Inc., and its successors in title,[8] to enjoy the beach area on Lot 2 shown on the above plan and a reasonable and safe access over that portion of Lot 2 owned by the defendants, the location of which is to be defined by the defendants.

*So ordered.*

---

[8]Based on the record before us the excluded lots are 137-147, 154, 158, 167-174, 202-204, 211-213, 250-251, 254-258, and 300, as shown on the plan of lots in Colonial Park recorded in the Worcester County registry of deeds in Plan Book 61, Plan 31. From the record, it is unknown whether New-Web Realty, Inc., and its successors in title held any other lots in Colonial Park which would have merged with Lot 2. If there are any such lots, any dispute regarding their exclusion should be resolved by proceedings in the trial court.