[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties have filed a Motion For Summary Judgment and they have stipulated as to all material facts. The Court will not list all these facts, but will refer to them as appropriate in applying the law to the agreed upon facts.
ISSUE
The issue in this case is whether the plaintiffs have a 10' right of way over the defendants' property to the shore of Lake Washinee, Salisbury, CT.
FACTS
In 1962, Clifford Bloomer created a five-lot subdivision shown on a map (Ex. 2), which shows a 10' right of way meandering through lot 5 to the lake shore. This right of way began at the end of a 25' private road which gave each of the five lots access to the town road.
The first conveyance of any of the lots was of lots 4A and 4B, in 1962, to the Smiths, together with the 10' right of way from the end of the private road, across land of the grantor to the lake. This made lots 4A and 4B a dominant estate over lot 5, a servient estate.
The second conveyance from Mr. Bloomer was of lot 2 in 1962, to Bader and Block. This deed granted the 10' right of way over lots 4A and 4B, previously conveyed, and over lot 5, still owned by Mr. Bloomer, thereby making lot 2 a dominant estate over the servient estates of lots 4A, 4B, and 5.
The third conveyance by Mr. Bloomer, in 1967, was of his remaining subdivision lots, 1, 3, and 5, to Thomas Tabor, Jr. This deed refers to the previous conveyances of lots 4A, 4B and 2, and in the next paragraph states that "The above described premises are conveyed together. with and subject to all the various easements and rights of way reserved or granted in said deeds, reference to which being hereby made for a more complete description thereof."
In 1973, Mr. Tabor created a resubdivision, dividing his old lot 5 into new lots 5 and 6. Mr. Tabor conveyed lot I to the plaintiffs' predecessor CT Page 8508 in title in 1986, and lot 6 to the defendants in 1998. In his conveyance of lot 1, there is no mention of the 10' right of way.
DISCUSSION
A. The defendants claim that nowhere in the plaintiffs' chain of title did their lot 1 ever have a right to use the 10' right of way over lot 6. They further claim that such a right could exist only if it was created in the deed from Tabor to the plaintiffs' predecessor in title, because when Tabor received title to lots, 1, 3 and 5 of the original subdivision his ownership encompassed ownership of the fee and any rights of way that may have existed. The defendants assert that any rights of way as to lot 1 were extinguished under the legal doctrine of "merger', and were not recreated in the deed from Tabor to the plaintiffs' predecessor in title.
The plaintiffs respond by saying that unless Mr. Tabor received the whole subdivision, `merger' did not occur.
The plaintiffs further claim that even if "merger' occurred extinguishing the right of way as to lot 1, the new resubdivision filed by Mr. Tabor recreated it.
B. Pertinent Case Law
 If the owner of an easement in land acquires the fee, his lesser estate is merged therein and the whole legal title is vested in the grantee.
Kratochvil v. Cox, 129 Conn. 246, 249-250 (1942).
 It is true, as the plaintiff claims, that an easement of way may become extinguished by the union in the same person of a title in fee to both the dominant and servient estates, or by such union of lesser estates of inheritance in both, which are coextensive, equal in validity, quality, and other circumstances of right.
Blanchard v. Maxon, 84 Conn. 429, 434 (1911).
To effect the extinguishment of an easement by merger arising from the acquisition of the fee in a servient property, "there must be a union of the greater and lesser estate in the same person and in the same right." See Hurley v. A'Hearn, 338 Mass. ___ CT Page 8509 157 N.E.2d 223, 224; Restatement: Property Secs. 497-499; Am. Law of Property, Secs. 8.88-8.93;. . . . O'Malley et al v. Commissioner of Public Works of Boston, et al. 164 N.E.2d 113, 340 Mass. 542, 545
(1960).
 "[I]n order to extinguish an easement by merger, a unity of title must have come into existence in the same person. . . . [An owner] cannot have an easement in its own estate in fee." York Realty, Inc. v. Williams, 315 Mass. 287, 289, 52 N.E.2d 686
(1943). For the unity of title to extinguish an easement, the ownership of the two estates must be coextensive. York v Realty, Inc., 315 Mass. at 290, 52 N.E.2d 686; Myers v. Salin, 13 Mass. App. 127, 142, 431 N.E.2d 233 (1982). "When a person holds one estate in severalty and only a fractional part of the other, there is not extinguishment of an easement." Mills v. Mason, 120 Mass. 244, 251
(1876); York Realty, Inc., 315 Mass. at 290, 52 N.E.2d 686. For the unity of title to extinguish an easement, it is the ownership of the two estates that must be coextensive, Mills v. Mason, 120 Mass. at 251; York Realty, Inc., 315 Mass. at 290, 52 N.E.2d 686, and not the land area comprising the dominant and servient estates. The common ownership need not extend to the whole of the original dominant estate. 2 American Law of Property § 8.92 (1952 1977 Supp.).
Cheever, et al v. Graves, et al, 592 N.E.2d 758, 761 (Mass.App.Ct. 1992).
Once an easement is extinguished by merger, it cannot come into existence again merely by severing the dominant and servient estates. For the easement to arise again, it must be created anew by express grant, by reservation, or by implication. Restatement of Property § 497 (1944 1991-1992 Supp.). 2 American Law of Property § 8.91 (1952 1977 Supp.). Tiffany, Real Property § 822, at 381 (3d ed. 1939 1992 Supp.) Because the judge concluded that the doctrine of merger was inapplicable, he did not determine whether the easement was created anew for those Colonial Park lots held in common ownership with Lot 2 subsequent to their conveyance to New-Web Realty, Inc., in CT Page 8510 1964. He did find, however, that none of the individual deeds to the Colonial Park land owners contained any reference to beach rights or access rights over Lot 2. Thus, if the easement was created anew in those lots held in common ownership with Lot 2 by New-Web Realty, Inc., and its successors in title, it would have had to arise by implication.
Cheever, et al v. Graves, et al, 592 N.E.2d 758, 762 (Mass.App.Ct. 1992).
CONCLUSIONS
When lots 1, 3 and 5 were conveyed to Mr. Tabor in 1967, he then had title in fee simple absolute to the dominant and servient estates. As owner of lot 1, Mr. Tabor would not have nor need a right of way over lot 5, because he owned lot 5. The doctrine of "merger' extinguished the right of way because an owner cannot have an easement in its own estate in fee.
See Kratochvil v. Cox, Blanchard v. Maxon, O'Malley, et al v.Commissioner and Cheever, et al v. Graves, et al, supra.
In their April 18, 2001 Motion for Summary Judgment and Answer to Defendant's Motion for Summary Judgment, the plaintiffs have made three arguments; A, B and C, and the Court will consider them in order.
A. Conn. Gen. Stat. 47-361, is dispositive on the grant of the right ofway.
In light of the conclusion of this court that the right of way in question was extinguished by the merger of the dominant and servient estates, Section 47-361, a 1975 statute, is not relevant to this case, because it applies only to existing `rights, privileges and appurtenances.' The extinguishment by merger meant that lot 1's right of way over lot 5 no longer existed, as of 1967, and therefore it did not exist in 1975.
B. The Doctrine of Merger is not applicable.
The plaintiffs claim that "case law on the subject holds that unless Mr. Tabor received the whole subdivision, merger does not happen." They further claim that where subdivisions are concerned, unless the whole servient tenement is acquired, that is, Lots 4A/4B, and 5, there can be no extinguishment of the easement.
28 A C.J.S. Easements, Section 123 discuss the doctrine of Merger. CT Page 8511
 In order that an easement will be extinguished under the doctrine of merger, there must be unity of title. . . . Unity of title denotes, within the meaning of this requirement, unity of valid title, title in the name of the same person, and, of course, simultaneous ownership. . . . The ownership of the two estates must be coextensive and equal in validity, quality and all other circumstances of right. Accordingly, an easement is not extinguished under the doctrine of merger by the acquisition by the owner of the dominant or servient estate of title to only a fractional part of the other estate. For the unity of title to extinguish an easement, it is the ownership of the two estates that must be coextensive, and not the land area comprising the dominant and servient estates; the common ownership need not extend to the whole of the original dominant estate; and thus, the common ownership of the servient estate and several of the dominant estates extinguishes the easement as to those lots.
28 C.J.S. § 123 b., pages 307-308.
Applying the above stated legal principles to the facts in this case results in the conclusion that merger occurred when Mr. Tabor took title to lots 1, 3 and 5. He had sole title in fee to both the dominant and servient estates. He owned all the dominant and servient estates in those lots, and as stated above, the common ownership need not extend to the whole of the original dominant estate, and thus the common ownership of the servient estate and several of the dominant estates extinguishes the easement as to those lots. There is no merger as to lots 4A and 4B, but that does not affect the unity of title as to the lots deeded to Mr. Tabor. The plaintiffs claim that 28 C.J.S. Easements § 123b, page 308 provides that where subdivisions are concerned, unless the whole servient tenement is acquired, that is, Lots 4A/B and lot 5 over which the right-of-way travels, there can be no extinguishment. They further allege that Connecticut has followed this rule in Blanchard v. Maxson,84 Conn. 429 (1911).
Section 123b, of 28 C.J.S. Easements refers to a factual situation wherein the whole of a subdivision is in essence the servient tenement of each lot and each lot is a servient tenement of every other lot. In that situation there would be no extinguishment of the easement by merger unless there is common ownership of the entire subdivision. Clearly the CT Page 8512 facts in this case are different and therefore that rule is not applicable.
The Blanchard case, supra, cited by the plaintiffs, stands for the proposition that if no one person is possessed of both the dominant and servient tenements at one time, there is no merger. However in the instant case, Mr. Tabor owned both estates, so the Blanchard case is inapplicable.
C. The Tabor re-subdivision re-confirms the right of way.
The plaintiffs argue that when Mr. Tabor created a resubdivision in 1973, by dividing lot 5 into new lots 5 and 6, he resurrected the right of way, even if the right to use it had been merged into the lots he received in his deed. The resubdivision map shows the 10' right of way over lot 6. The deed from Mr. Tabor to the plaintiffs in 1986 make no mention of the right of way; there is no language in the deed that could be construed as reviving the right of way. Any reference to a map is to the original subdivision map (Bloomer) and is for purposes separate and distinct from the right of way.
 Once an easement is extinguished by merger, it cannot come into existence again merely by severing the dominant and servient estates. For the easement to arise again it must be created anew by express grant, by reservation, or by implication. See Cheever v. Graves, supra, p. 762.
 Thus, ordinarily a grant of the former dominant estate to another will not carry with it the former incidents of such estate unless they are reestablished by force of the grant itself, by such words of description as could bring them into being by way of new grant; and, on the other hand, a grant of the former servient estate to another will not reestablish the easement unless it contains a sufficient reservation thereof.
 Although the old easement is not revived by the severance, yet a new easement may be granted or reserved by implication, if it is apparent, continuous and necessary, on the same principle and under the same circumstances that easements are granted by implication on the severance of an estate originally entire.
CT Page 8513 28 A C.J.S. Easements § 123 C. page 308-309.
In the instant case, the grant of the former dominant estate to the plaintiffs' predecessor in title (Ex. 6) contains no words of description that bring the former incidents of that dominant estate into being; the grant of the former servient estate to the defendants (Ex. 9) does not contain any reservation of an easement that could affect the land previously conveyed to the plaintiffs' predecessors in title. There was a reservation expressed, but that benefitted only land retained by the grantor, Mr. Tabor.
After the merger there was no reestablishment of the 10' right of way, either by grant or reservation, nor has there been any showing that a new easement was granted or reserved by implication.
The Court orders as follows:
1. The plaintiffs' motion for summary judgment is denied.
2. The defendants' motion for summary judgment is granted.
Richard A. Walsh, J.